(No. 85-CC-0914—)

JAMES FAUSCH, Claimant, v. BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Respondent.

*Opinion filed October 10, 1989.*

LEONARD M. RING & ASSOCIATES (GARY D. LEIGH, of counsel), for Claimant.

SIEGAN, BARBAKOFF & GOMBERG (NORMAN P. JEDDELOH, of counsel), for Respondent.

Raucci, J.

On November 18, 1983, Claimant alleges that he was injured when he fell four floors through an open snow chute which was part of a University of Illinois-Chicago parking garage and sustained serious injuries in said fall. Negligence was alleged against Respondent on the grounds that it negligently supervised, controlled and maintained said parking lot, negligently allowed an open chute upon the fourth floor of its parking lot without adequate guard rails, and negligently allowed an opening to exist on the fourth floor level of the

parking lot. Claimant's fall through the snow chute and his resulting injuries are not disputed by the parties. However, a number of questions of fact are at issue.

Claimant testified that he accompanied five friends in a van from Indiana to the University of Illinois-Chicago in hopes of attending a rock concert at the Chicago Pavillion. The driver of the van entered the Pavillion parking facility after paying a parking fee and proceeded to the fourth and uppermost level to park. Claimant and his friends then had mixed drinks made from liquor in the vehicle. Claimant had a whiskey and cola at this time and consumed another drink during the drive. The party then proceeded to the concert ticket office where they were informed that the concert was sold out. They returned to their vehicle at the top of the parking facility and began mixing another drink when they encountered a university police officer who instructed them to vacate the premises. Alcoholic beverages are not allowed on university property.

Claimant testified that he asked the police officer where the restroom facilities were located in the parking facility. The officer responded that there were no facilities at the parking lot. The officer, Gordon Hartman, testified that he had seen Claimant and his party drinking and requested they vacate the premises. He had no recollection of a request for restroom facilities by Claimant or others in the party.

Claimant testified that he then walked away from the vehicle parked near the center of the top level and proceeded toward the outer perimeter of the structure to find a place to urinate. He stated the lights were operating at this time. However, because the lights were situated in the center and not placed around the outer edge of the structure, it was allegedly very dark near the

snow chute located on the east wall of the lot. Claimant stated that as he walked toward the outer perimeter of the lot, he walked into the two pipes placed horizontally across the opening of the chute, tripped over them and fell into the snow chute head first, eventually landing on his back four stories below. Claimant said he never saw the pipes before falling.

After the fall, Claimant was taken to Cook County Hospital where he was diagnosed as having sustained a colles fracture, fracture of the right distal radius, right hemeral superficial neck fracture, fracture of the left ankle and a compression fracture at L-2.

Claimant presented no witnesses to corroborate his contention that the lighting was inadequate near the snow chute. He stated that he was able to see cars parked along the wall next to the snow chute. Respondent presented Kenneth Belford, an architect employed by the university in charge of reviewing the plans and construction of the structure. He testified that the lighting was in compliance with all applicable codes and standards. Officers Hartman and DeFalco of the university police also testified that the lighting was functioning properly and the snow chute was clearly visible without the use of flashlights.

The manner in which Claimant fell is disputed. Claimant stated he walked forward facing the rails barring the snow chute, flipped over them, and fell head first into the chute. He stated he managed to grasp a cable during his fall, which allowed him to right himself before hitting the ground. The barrier rails in question were located at heights of approximately one foot and three feet from the floor, placed horizontally across the opening of the chute. The rails were approximately 4½ inches in diameter and were removable to allow snow

plows to push snow down into the chute. A 17-inch wide ledge extended from the center line of the pipes to the edge of the chute opening.

Officer DeFalco was dispatched immediately after the accident to the parking structure with another officer to make certain the safety rails protecting the snow chute were still in place. He testified that the rails were in place and the lighting provided visibility of the snow chute. Officer DeFalco further stated that the Claimant told him he had backed up and fell through the chute. The officer stated he could see no way that anyone could go over the rails without climbing over them after reexamining the accident scene.

Dr. Robert A. Kirschner, a forensic pathologist serving as deputy chief medical examiner in the office of the medical examiner of Cook County, Illinois, testified as an expert witness on behalf of Respondent. Dr. Kirschner's medical specialty is the evaluation of injuries and making deductions based upon such evaluations which explain how specific injuries were incurred. Dr. Kirschner testified that Claimant's injuries were not consistent with a fall head first. There were no bruises or abrasions to the face indicated in Claimant's medical records or photographs which were admitted into evidence by agreement of the parties. The type of fractures suffered by Claimant support the conclusion that he fell feet first landing on his side and back. Dr. Kirschner further stated that it was unlikely that Claimant could have grabbed a cable as he fell and righted himself before landing as the head is the heaviest part of the human body. Claimant's wrist fracture would not have been caused by grasping the cable, in Dr. Kirschner's opinion. Dislocations of the shoulder or elbow would have more likely resulted if Claimant had grabbed the cable.

Both Dr. Kirschner and Eleanor Burman, head of the blood toxicology laboratory at Cook County Hospital, testified that Claimant's blood-alcohol level was .135 milligrams percent several hours after the accident. Dr. Kirschner stated that this level of blood alcohol coupled with the prescription drug Mellaril, which Claimant had taken that day, would have resulted in impaired judgment, reduction of gross coordination, limitation of fine motor coordination and the likelihood of reduced night vision. Briefly, Claimant would have had diminished ability to act in his own best interest. Claimant offered no testimony of witnesses at the scene or medical personnel to support his version of the accident.

The State is not an insurer of the safety of invitees, but must only exercise reasonable care for their safety. (See *Fleischer v. State* (1983), 35 Ill. Ct. Cl. 799.) The court has further held that the burden of proof in a negligence action is upon Claimant and that Claimant must prove by a preponderance of the evidence that the State was negligent. (See *Hoekstra v. State* (1985), 38 Ill. Ct. Cl. 156; *Hill v. State* (1978), 32 Ill. Ct. Cl. 482; *Levy v. State* (1988), 22 Ill. Ct. Cl. 694.) Before Claimant, as an invitee, is able to recover, he must show that the premises were in a defective condition, that the defective condition was created by the State as owner of the premises or that a defective condition was in existence for such a period of time as to allow the State to know of it and to correct it, and that the defective condition caused the injury. (See *Mullen v. State* (1985), 38 Ill. Ct. Cl. 44.) There is no obligation to protect an invitee against dangers which are known, or which are so obvious and apparent that the invitee may reasonably be expected to discover them. See *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465.

Claimant offered no evidence that showed the design or construction of the parking lot and snow chute to be defective. The defect alleged is the existence of the snow chute without adequate lighting or warning of the chute's existence. The testimony of Officer DeFalco and Mr. Belford and photographic evidence illustrating the lighting and snow chute are persuasive in reaching a determination that any danger to an invitee was open and obvious. *Sepsey v. Archer Daniels Midland Co.* (1981), 97 Ill. App. 3d 867, 423 N.E.2d 942, held that a visitor is responsible to see any open and obvious area and thus is expected to discover them. A landowner is not required to give precautions or warnings where such dangers are evident in order to exercise the duty of reasonable care toward invitees.

Claimant has failed to prove the existence of any defective condition at the parking lot. The lights were functioning and, by his own admission, allowed him to see cars parked on either side of the snow chute. The safety rails over the opening to the snow chute were in place before and after the accident and were in compliance with all applicable building codes. There was no evidence presented to cause Respondent to foresee an invitee using the parking lot as a urinal. The Claimant testified he was told there were no restroom facilities on the premises by a policeman. Respondent exercised reasonable care under the facts of this case.

How Claimant fell into the chute is disputed. However, as there was no breach of any duty owed him, it is unnecessary to discuss whether or not he was contributorily negligent. In the absence of any negligence by Respondent, the Claimant is barred from any recovery.

It is therefore ordered, adjudged and decreed that this claim is denied.