(No. 90-CC-3402–)

RICHARD BLAKELY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 7, 1996.*

MATTHEW J. MAURER, for Claimant.

JIM RYAN, Attorney General (CHAD D. FORNOFF, Assistant Attorney General, of counsel), for Respondent.

## OPINION

FREDERICK, J.

Claimant, Richard Blakely, filed his complaint in the Court of Claims on January 19, 1990. His claim sounds in tort. Claimant seeks recovery for injuries he received at the Pere Marquette State Park when his wheelchair went over the sidewalk and down a steep hill where it struck a steel post. Claimant alleges the State knew or should have known that the sidewalk in question was unsafe because it did not have guard rails, fences or protective railings. Claimant seeks damages in excess of $15,000.

The court has carefully reviewed the testimony and exhibits and the court has considered the briefs and arguments of counsel.

### The Facts

On June 22, 1989, the Claimant, Richard Blakely, was employed as the Executive Director at the Illinois Springfield Center for Independent Living in Springfield, Illinois. The purpose of that organization is to advance the rights of individuals with disabilities in the community.

On June 22, 1989, Claimant was at Pere Marquette State Lodge in Grafton, Jersey County, Illinois, for a meeting of the various centers of independent living located in the State of Illinois. The meeting was scheduled for two days with the participants staying overnight at the lodge. There were other individuals with disabilities at the meeting, including those being confined to a wheelchair, who attended this meeting. The lodge and grounds had been publicized as being accessible to the disabled and this was a fact that was relied upon in selecting the Pere Marquette State Lodge facility for the meeting. The lodge's brochure states that all areas of the lodge allow for handicap access.

At approximately 12:30 p.m. on June 22, 1989, the individuals at the meeting broke for lunch. At that time, the Claimant and another individual decided they would look around the area and get some fresh air. They went to an area near the tennis courts. The Claimant had never been at the facility before. The Claimant is a quadriplegic who has been in a manual wheelchair for the past nine years. The Claimant testified he has never experienced problems in the past in maneuvering and traveling in his manual wheelchair. The Claimant went over a bridge eastbound and then was returning to the lodge. The Claimant was going westbound over the bridge near the tennis courts after having previously traveled the same route in the opposite direction. Claimant started to make a 90 degree turn in the area where the sidewalk slopes toward a large hill. At the bottom of the hill there was a tree with steel posts around it. There was no other way by which Claimant could return to the lodge other than the one taken by the Claimant. The Claimant attempted to stop his wheelchair from rolling over the sidewalk by grabbing the pegs on the side of his wheelchair. He attempted to put his hand in the wheel to stop his descent down the hill and he attempted to apply the brakes on his

wheelchair. As soon as the Claimant's front wheels went over the edge of the sidewalk, his wheelchair picked up speed as it went down the hill. The Claimant collided with the steel posts around the tree. Upon impact, the Claimant was thrown from his wheelchair and landed in a nearby parking lot approximately five to six feet away.

At the end of the sidewalk where the Claimant's wheelchair left the walkway there were no railings, bushes or other type of guard rail. The hill slopes down 10 to 12 feet from the sidewalk to the steel posts. The change in elevation from the sidewalk to the area of the steel posts is approximately 15 feet.

The Claimant was assisted back into his wheelchair by an individual at the park. Due to his disability, he did not realize that his leg was broken. The Claimant did feel a pressure in his leg, was sweating profusely, and was having muscle spasms and headaches. Claimant's leg would not stay straight and was sticking out to the right. The Claimant left the conference early and returned to his home in Springfield, Illinois. He experienced difficulty and pain in driving home. After he arrived home, the Claimant's mother called 911 due to Claimant's condition and he was transported by ambulance to Memorial Medical Center.

The Claimant's leg was broken in two places. One break was above the knee and the other one below the knee. This condition is called a floating knee. He was hospitalized from June 22, 1989, through June 24, 1989. Claimant was readmitted from June 28, 1989, through July 1, 1989. His leg was put in a cast.

Due to the accident, Claimant suffered numerous damages. Claimant believes he developed bladder infections because he was unable to empty his leg bag due to his cast. In addition, he lost approximately $1,500 in salary due to 14 days of missed work as a result of the

medical problems he experienced. Since the Claimant had to keep his cast dry, he was unable to shower. He experienced great difficulty in washing his hair. Claimant could not push his wheelchair and was required to use an electric wheelchair. His leg was placed in a cast for approximately six weeks and then replaced by a knee brace. The Claimant had difficulty sleeping and was unable to drive which substantially impaired his mobility.

The Claimant incurred medical bills for his two hospital stays in the amount of $2,880. The bills for the two hospital stays were $1,210.49 and $1,680.52, respectively.

On the date of the accident, Pere Marquette State Park in Jersey County, Illinois, was under the care and control of the Illinois Department of Conservation.

Claimant was reimbursed for his meal expenses through a travel voucher with his agency. Worker's compensation insurance was available through Claimant's employer agency but Claimant did not file a worker's compensation claim for his injuries. Claimant arrived at the park on the morning of June 22, 1989, and did not pay an admission fee to enter the park itself.

After Claimant's first stay in the hospital, he claims he contracted a bladder infection. This was not diagnosed by any physician and no drugs were prescribed for this infection.

Claimant's second hospitalization from June 28, 1989, to July 1, 1989, was entirely related to the use of a sulfa drug. Claimant took a sulfa-based drug between the time of his first and second hospitalizations. Claimant took a sulfa-based tablet, having forgotten that he was allergic to sulfa. As a result of this self-treatment with sulfa drugs, Claimant developed a serious reaction and was rehospitalized.

## The Law

The State owes a duty of reasonable care to the users of its parks. (*State Farm Mutual Automobile Insurance Co. v. State* (1992), 44 Ill. Ct. Cl. 265.) The Claimant was injured while at Pere Marquette State Lodge near Grafton, Illinois. This park was under the care and control of the Illinois Department of Conservation. There is no question that Claimant received severe injuries as the result of his crash into the steel post.

The Respondent has raised the following issues in opposition to the claim. The Respondent argues that Claimant failed to exhaust his other remedies by failing to file a workers' compensation claim with his employer since he was at a business meeting. Claimant believed that there may have been a workers' compensation claim through his employer. The Respondent has also raised that the Recreational Use of Land & Water Areas Act (745 ILCS 65/1 *et seq.*) applies under the facts of this case and the State would only be liable if the State's conduct were a willful and wanton failure to guard or warn Claimant against a dangerous condition. Claimant admits Respondent's actions were not willful and wanton.

We need not resolve the foregoing two issues because the Court finds Claimant has failed to prove even a negligence claim against Respondent by a preponderance of the evidence. The Claimant went along a sidewalk and then went back the same way he had just come. He obviously did not observe any dangerous condition as he did not take any special precautions on the return route. The Claimant presented no evidence that the State had actual or constructive notice that the walkway constituted a dangerous condition. The State is not an insurer of invitees on State property. The State must only exercise reasonable care for the safety of invitees. (*Fausch v. Board of*

*Trustees of the University of Illinois* (1989), 42 Ill. Ct. Cl. 175.) The Claimant has the burden of proving that the State was negligent by a preponderance of the evidence. (*Hoekstra v. State* (1985), 38 Ill. Ct. Cl. 156.) In order for Claimant to prevail, he must prove by a preponderance of the evidence that the State has breached its duty of reasonable care, that the breach was the proximate cause of Claimant's injuries, that Claimant was injured as a result of the negligence, and that the State had actual or constructive notice of the alleged defect. *Dunbar v. State* (1992), 45 Ill. Ct. Cl. 175.

We have reviewed the record very carefully. There is no evidence of prior accidents or warnings to the State indicating that this sidewalk was defective. This sidewalk was not a defective condition *per se*. There was no expert testimony to indicate that this was an obvious dangerous condition. The Claimant has failed to meet his burden of proof because he has failed to prove the State was negligent. While we certainly sympathize with the Claimant because of his injuries, we must find that they were not caused by the State's negligence.

For the foregoing reasons, it is the order of the Court that this claim be and hereby is denied.