A10A2140. FREEMAN v. EICHHOLZ.
(705 SE2d 919)

ELLINGTON, Chief Judge.

Carolyn Freeman appeals from an order of the Superior Court of Chatham County which granted summary judgment to attorney Benjamin Sheftall Eichholz in this legal malpractice suit. The court concluded that Eichholz was entitled to summary judgment because Freeman could not prove, as a matter of law, that Eichholz's negligence proximately caused her alleged harm. Specifically, the court found that, despite Eichholz's failure to timely file an ante litem notice in Freeman's underlying personal injury suit, Freeman could not recover in that suit for the injuries she sustained when, while visiting an inmate at the Wayne State Prison, the chair in which she sat collapsed. Freeman contends the court should have concluded that she was an invitee, and not a licensee, and that the prison violated its duty of ordinary care to her as an invitee. We agree that Freeman was an invitee. Nevertheless, we affirm the trial court's grant of summary judgment because, regardless of Freeman's status, the record supports the court's finding that she could not have prevailed in the underlying suit and, thus, could not establish that her attorney proximately caused her alleged harm.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genu-

---

[46] Id. (citation and emphasis omitted).
[47] See *Strickland*, supra.

ine issue of material fact and that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. Our review of an appeal from summary judgment is de novo.

(Citations, punctuation and emphasis omitted.) *Griffin v. Fowler*, 260 Ga. App. 443, 444 (579 SE2d 848) (2003). So viewed, the record reveals the following relevant facts.

Wayne State Prison permits inmate visitation on weekends and holidays. On November 15, 2003, a regular visitation day, Freeman went to the prison to see a friend who was incarcerated there. Freeman had been to the designated visitation area at least 11 times before. After a corrections officer admitted Freeman to the visitation area, she walked to the table where her friend was to be seated, and she sat down in a chair provided by the prison. The chair collapsed, with the plastic back separating from the metal frame. Freeman fell to the floor and struck her head, and she was knocked unconscious by the blow. She suffered injuries to her neck, head, and back.

The chairs used by the prison are stackable. They have molded, one-piece "poly-shell" seats which are attached beneath the seat to a metal frame and chair legs. Freeman's chair collapsed when the seat became detached from its frame. There is no competent evidence in the record establishing what caused the seat to become detached from its frame. Prison officials deposed that, on the day Freeman was injured, the prison had in place a procedure for inspecting the chairs in the designated visitation area. At the end of each visitation day, corrections officers inspected the chairs for contraband and for damage before they stacked the chairs and stored them in a closet. The officers had a duty to inspect and to make a report of any contraband found. If the officers discovered that a chair was damaged or defective, it was their standard practice to send it to the prison's maintenance unit to be repaired or replaced. After the chairs were stored, they remained locked away, accessible only by the officers, until they were needed again.

When the chairs are removed from storage and set up for the next visitation day, corrections officers are present and supervise the staff and inmates who help set up the room for visitors. On the day Freeman was injured, three corrections officers were supervising visitation. There is no evidence that anyone saw a problem with the chair at issue nor is there any evidence to show that the chair had an

obvious problem or may have been dangerous. Freeman also deposed that she saw nothing wrong with the chair before she sat on it. The officers deposed said they had no recollection or records of any other chair having collapsed in the visitation area.

On January 23, 2004, Freeman retained Eichholz to represent her in a personal injury suit against the State of Georgia and the Department of Corrections. It is undisputed that Eichholz failed to timely file the ante litem notice required by OCGA § 50-21-26. Consequently, Freeman's lawsuit, which was filed by later-retained counsel, was dismissed with prejudice. On November 14, 2006, Freeman filed the instant legal malpractice suit. After a hearing, the Superior Court of Chatham County granted Eichholz's motion for summary judgment, finding that Freeman failed to prove that, but for Eichholz's negligence, she would have won a judgment in her favor on her underlying personal injury claim.

1. Freeman contends that the trial court erred in concluding that her status for the purpose of analyzing her underlying negligence claim was that of a licensee. We agree and hold, given the facts of this case, that Freeman was an invitee.

In a cause of action for negligence, Freeman bears the burden of establishing four essential elements:

> (1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

(Citation and punctuation omitted.) *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). See also *Dixie Group v. Shaw Indus. Group*, 303 Ga. App. 459, 466-467 (4) (693 SE2d 888) (2010). The legal duty of care owed by a landowner to a person coming upon the property varies and is fixed according to the legal status of the person entering the premises. See *Jones v. Barrow*, 304 Ga. App. 337, 338-339 (1) (696 SE2d 363) (2010); see also *Jarrell v. JDC & Assoc.*, 296 Ga. App. 523, 524-525 (675 SE2d 278) (2009). A landowner owes the highest duty — the duty of ordinary care — to an invitee. OCGA § 51-3-1; *Jarrell v. JDC & Assoc.*, 296 Ga. App. at 525. A landowner owes a lesser duty — to avoid causing wilful or wanton injury — to a licensee. OCGA § 51-3-2 (b); *Jarrell v. JDC & Assoc.*, 296 Ga. App. at 525.

Whether an inmate's visitor should be classified as an invitee or

a licensee has not been addressed by Georgia's appellate courts.[1] An invitee is one who enters the premises for any lawful purpose "by express or implied invitation." OCGA § 51-3-1. For an express or implied invitation to exist, a privity of interest must exist between the owner or occupier of the premises and the purported invitee. *Epps v. Chattahoochee Brick Co.*, 140 Ga. App. 426, 427 (1) (231 SE2d 443) (1976).

> The accepted test to determine whether one is an invitee or a licensee is whether the party coming onto the business premises had present business relations with the owner or occupier which would render his presence of mutual benefit to both, or whether his presence was for his own convenience, or was for business with one other than the owner or occupier.

(Citations omitted.) *Moore-Sapp Investors v. Richards*, 240 Ga. App. 798, 799 (1) (a) (522 SE2d 739) (1999); accord *Anderson v. Cooper*, 214 Ga. 164, 169 (104 SE2d 90) (1958) (courts should look for "real or supposed" benefits to landowner and purported invitee); *Matlack v. Cobb Elec. Membership Corp.*, 289 Ga. App. 632, 634 (658 SE2d 137) (2008); *Clark Atlanta Univ. v. Williams*, 288 Ga. App. 180, 181 (654 SE2d 402) (2007). A licensee, on the other hand, is one whose visit is "merely for his own interests, convenience, or gratification." OCGA § 51-3-2 (a) (3); *Behforouz v. Vakil*, 281 Ga. App. 603, 603-604 (636 SE2d 674) (2006).

In the instant case, the record supports a finding that both parties to the underlying litigation received benefits from prison visitation. That Freeman derived value from her visit is patent because it is something that she voluntarily sought. She traveled to the prison at least 11 times to see her friend. Although less obvious, the defendants benefitted from inmate visitation as well. The appli-

---

[1] Of those jurisdictions that have addressed the issue, the majority have concluded that a prison inmate's visitor is an invitee of the prison. See, e.g., *Tobar v. United States*, 696 FSupp.2d 1373, 1379 (S.D. Ga. 2009) (because visitation indirectly benefits prison officials, inmate's visitor is an invitee); *Levy v. State of Illinois*, 22 Ill. Ct. Cl. 694, 696 (1958) ("The fact that the state institutions have visitors' days and encourage visits with patients [of the prison hospital] would indicate that claimant was more than a 'licensee,' and should be treated as an 'invitee.' "); *Blair v. Ohio Dept. of Rehab. &c.*, 582 NE2d 673, 677-678 (Ohio Ct. Cl. 1989) (applying the "invitation and purpose" test, the court concluded that the inmate's visitor was an invitee); *Lewis v. United States*, 702 FSupp. 231, 234 (E.D. Mo. 1988) (by opening itself to visitors during certain visiting hours, the prison impliedly invites or encourages family members of inmates to enter the premises, and thus, assumes the obligation of keeping the premises reasonably safe for its "public invitees"); but cf. *Linn v. United States*, 979 FSupp. 521, 523 (c) (E.D. Ky. 1997) (finding that the visitor was the inmate's social guest and that the government derived no benefits from his presence, the court concluded the visitor was a licensee).

cable Rules and Regulations of the State of Georgia provide that "[v]isiting is an inmate privilege[,] not a right. As such, some or all of an inmate's visiting privileges may be suspended or revoked as a disciplinary measure[.]" Ga. Comp. R. & Regs. r. 125-3-4-.01 (2010). Thus, an authorized visitor's name may be removed from an inmate's visitor list for violating prison rules. Ga. Comp. R. & Regs. r. 125-3-4-.02 (3) (2010). On the other hand, the warden may authorize "special visits . . . for compassionate or other valid reasons" when the visitor is expected "to exert a salutary effect through their visit." Ga. Comp. R. & Regs. r. 125-3-4-.02 (4) (2010). These rules reveal that inmate visitation is a tool that may be used to punish, to reward, or to rehabilitate. As such, visitation benefits prison officials and the state penal system. See *Overton v. Bazzetta*, 539 U. S. 126, 134 (II) (123 SC 2162, 156 LE2d 162) (2003) ("Withdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior.").

That benefit is significant enough that Georgia's Rules and Regulations require that "[e]ach correctional institution shall maintain a visiting area where inmates may visit with their authorized visitor. Toilet facilities shall be available for the visitors." Ga. Comp. R. & Regs. r. 125-3-4-.04 (2010). Prison officials are required to notify authorized visitors when they have been removed from an inmate's visitor list or when an inmate's visitation privileges have been suspended "so that potential visitors may avoid the inconvenience and frustrations associated with an unproductive trip." Ga. Comp. R. & Regs. r. 125-3-4-.03. Wayne State, the prison at issue in this case, held itself open to visitors, maintaining regular visitation hours. That the defendants in the underlying suit supported inmate visitation reveals that it was beneficial to them.

Thus, under the facts of this case, we hold that visitation between inmates and their authorized and properly admitted visitors benefits both the visitor and the defendants so that a "mutuality of benefit" exists sufficient to establish the requisite privity of interest. Applying the accepted test, we conclude that Freeman's status in the underlying case was that of an invitee, and therefore, the trial court's determination that Freeman was a licensee was erroneous.

2. Although we conclude that Freeman was an invitee, the trial court was nevertheless correct in concluding that Freeman failed to show that the defendants in the underlying suit breached the duty of ordinary care owed to her.

It is fundamental that, in a premises liability case, "[t]he true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner and not known to the person injured that a recovery is

permitted." (Citations, punctuation and emphasis omitted.) *Ballard v. Southern Regional Med. Center*, 216 Ga. App. 96, 97 (1) (453 SE2d 123) (1995).

It is undisputed that no prison employee or official had actual knowledge that the chair was defective. Freeman argues that the defendants in the underlying suit had constructive knowledge that the chair was defective because, if the corrections officers had properly inspected the chair, they would have discovered the defect. However, there is no evidence in the record establishing the nature of the alleged defect. Freeman deposed that she heard someone say that "the screws or something" attaching the chair to the frame may have come out, causing the chair to fall apart. And, a corrections officer deposed that, if the seat had become loose from its frame, it should have been taken out of service. Both Freeman and the corrections officer, however, were speculating about why the chair fell apart as neither actually observed any defect.

There is no evidence establishing exactly how the chair was defective, whether the defect was one which would be visible during an inspection, or how long the defect existed; thus, there is no logical foundation for arguing that such a defect should have been discovered during the prison's inspection procedure.[2] As we held in *Ballard v. Southern Regional Med. Center*, "there is no duty to discover a defect which is not manifested until the incident causing injury." Id. at 98 (1). Consequently, there is no evidence from which a jury could infer that prison officials had constructive knowledge that the chair was defective. Because Freeman failed to produce evidence from which a jury could infer that the defendants in the underlying suit had superior knowledge of the hazard, the defendants would have been entitled to summary judgment. See id.

3. Because the evidence shows, as a matter of law, that Freeman would not have prevailed in the underlying negligence action, the trial court properly concluded that Freeman could not meet her burden of proving, as a matter of law, that her attorney's negligence proximately caused the claimed harm in the instant legal malprac-

---

[2] In her appellate brief, Freeman contends that the doctrine of res ipsa loquitur should be applied to fill the evidentiary gap between the alleged negligence of the prison employees and her injury. Our review of the pleadings, of Freeman's response to Eichholz's motion for summary judgment, and of the court's order reveals that the issue of the applicability of the doctrine of res ipsa loquitur was not raised and argued before the trial court. Consequently, the issue is not properly before us. See *Ballard v. Southern Regional Med. Center*, 216 Ga. App. at 99 (2); *Jones v. Equipment King Intl.*, 287 Ga. App. 867, 869 (1) (652 SE2d 811) (2007) ("We will not reverse an award of summary judgment based on an argument raised for the first time on appeal.") (footnote omitted).

24

tice action. As we have held, to

> prevail on a legal malpractice claim, a client must prove that (1) he employed the defendant attorney; (2) the attorney failed to exercise ordinary care, skill, and diligence; and (3) this failure was the proximate cause of damages to the client. To establish proximate cause, the client must show that but for the attorney's error, the outcome would have been different; any lesser requirement would invite speculation and conjecture. The defendant attorney is entitled to summary judgment if he shows that there is an absence of proof adduced by the client on the issue of proximate cause.

(Citation omitted.) *Millsaps v. Kaufold*, 288 Ga. App. 44, 44-45 (653 SE2d 344) (2007). Here, the evidence shows that Freeman would not have prevailed below; rather, the defendants in the underlying suit would have been entitled to judgment as a matter of law. Therefore, Freeman "cannot show a causal link between [her] attorney's failure to [timely file the requisite ante litem notice, which resulted in her case being dismissed,] and any injury suffered." *Houston v. Surrett*, 222 Ga. App. 207, 209 (2) (474 SE2d 39) (1996). Because Freeman cannot prove proximate causation, an essential element of her legal malpractice claim, the trial court properly granted summary judgment to Eichholz. See id.

*Judgment affirmed. Doyle, J., concurs. Andrews, J., concurs in Division 2 and in the judgment.*

DECIDED FEBRUARY 17, 2011.

*Warren R. Hinds*, for appellant.
*Oliver Maner, Patrick T. O'Connor, Benjamin M. Perkins, Douglas E. Herman*, for appellee.