**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**November 29, 2012**

# In the Court of Appeals of Georgia

A12A1418. MARTIN v. DEMPSEY FUNERAL SERVICES, INC.
et al.

MILLER, Presiding Judge.

Appellant Genevieve Martin sued appellees Dempsey Funeral Services of Georgia, Inc. and Magnolia Landcare Group, Inc. to recover for personal injuries that she allegedly sustained when she slipped and fell while visiting her daughter's gravesite at Dempsey Funeral's cemetery. The trial court granted summary judgment in favor of Dempsey Funeral and Magnolia Landcare, finding that the Recreational Property Act, OCGA § 51-3-20 et seq. ("RPA"), precluded Martin's claims. The trial court alternatively concluded that summary judgment was appropriate since Martin was a licensee and there was no evidence that appellees had breached the standard of care. On appeal, Martin contends that the trial court's decision was erroneous since

(i) a jury question existed as to whether the RPA applied because the cemetery had mixed commercial and recreational uses; (ii) the RPA did not extend to Magnolia Landcare, a non-owner; and (iii) Martin had the status of an invitee, rather than a licensee.[1] We agree that the evidence raised jury questions as to the applicability of the RPA and Martin's legal status as either an invitee or a licensee. Accordingly, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations omitted.) *Carroll v. City of Carrollton*, 280 Ga. App. 172, 172-173 (633 SE2d 591) (2006).

So viewed, the record evidence reflects that on October 22, 2008, Martin's daughter was interred at the Rolling Hills Memory Gardens cemetery, which was

---

[1] Martin also argues that the RPA does not abrogate the duties imposed upon Dempsey Funeral under the Georgia Cemetery and Funeral Services Act of 2000, OCGA § 10-14-1 et seq., and the Rules of the Secretary of State, Ga. Comp. R. & Regs. r. 590-3-1-.01 (2). The trial court's order, however, did not address this claim. In reaching our appellate decision, we likewise express no ruling as to this claim.

owned and operated by Dempsey Funeral. Thereafter, on January 31, 2009, Martin, who was 85 years old, visited the cemetery with the intention of placing flowers at her daughter's gravesite. As she walked toward the gravesite, Martin slipped and fell. Following the fall, an orange baling twine was observed tangled around Martin's feet. Martin asserted that the baling twine was a trip hazard that had been negligently left on the ground, and that the baling twine was not easily visible since it was concealed by straw covering the ground.

Magnolia Landcare, a subsidiary of Dempsey Funeral, had performed certain aspects of the care and maintenance of the cemetery, including mowing the grass, trimming near grave markers, and distributing pine and wheat straw to make the cemetery grounds aesthetically pleasing. The pine and wheat straw used on the cemetery grounds was bound by baling twine and was kept in the cemetery's storage facility. The baling twine that had allegedly caused Martin's fall had the same color and similar appearance of the baling twine that had been used to bind the cemetery's pine and wheat straw.

As a result of the fall incident, Martin sustained injuries, including a broken arm and a broken hip. Martin filed the instant lawsuit against Dempsey Funeral and

Magnolia Landcare, contending that they had breached their duty of care to keep the cemetery premises safe and to remove debris and trip hazards in the gravesite area.

Dempsey Funeral and Magnolia Landcare denied liability. Following discovery, they jointly filed a motion for summary judgment, arguing that the RPA applied to the suit; Magnolia Landcare owed no duty since it was not an owner or occupier of the cemetery premises; Martin was a licensee on the cemetery premises; and no recovery was allowed since there was no evidence of a wilful or wanton injury. After hearing oral argument from the parties, the trial court granted the motion.

1. Martin contends that the trial court's grant of summary judgment was improper since the cemetery had mixed commercial and recreational uses, which raised a jury question as to whether the RPA applied.[2] We agree.

In accordance with the statutory provisions of the RPA,

an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes does not thereby:

_____

[2] We note that Dempsey Funeral and Magnolia Landcare have filed a motion for leave to file a sur-reply brief, which was attached as an exhibit to its motion. The motion is hereby granted, and we have considered the sur-reply brief in our resolution of this appeal.

4

(1) Extend any assurance that the premises are safe for any purpose;

(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed; or

(3) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

OCGA § 51-3-23. As an exception, the RPA does not limit liability "[f]or willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity[.]" OCGA § 51-3-25 (1).

By its plain terms, the RPA requires that the property be used for recreational purposes without charge. See OCGA § 51-3-23. It has been recognized, however, that a property may have mixed commercial and recreational purposes. In this regard, our Supreme Court of Georgia has ruled that "in order for the RPA to apply, it is not necessary that the public be on property for sheer recreational pleasure[,] and that the RPA may apply in situations where commercial interests are mixed with recreational activities." (Citation and punctuation omitted.) *Anderson v. Atlanta Comm. for the Olympic Games*, 273 Ga. 113, 116 (2) (537 SE2d 345) (2000). Nevertheless, "[i]f the public is invited to further the business interests of the owner -- e.g., for sales of food, merchandise, services, etc. -- then the RPA will not shield the owner from liability

5

even though the public receives some recreation as a side benefit." (Punctuation omitted.) Id. To determine the applicability of the RPA, the important criterion is the purpose for which the public is permitted on the property. id. The Court has adopted a balancing test that must be applied in making this determination, which "requires that all social and economic aspects of the activity be examined. Relevant considerations on this question include, without limitation, the intrinsic nature of the activity, the type of service or commodity offered to the public, and the activity's purpose and consequence." (Citation, punctuation, and emphasis omitted.) Id. at 117 (2). In applying the balancing test, the fact finder is not limited in its consideration to the facts as they existed at the moment of injury. *Atlanta Comm. for the Olympic Games, Inc. v. Hawthorne*, 278 Ga. 116, 117 (598 SE2d 471) (2004). Rather, the fact finder may consider a larger time frame and the totality of the circumstances. Id. at 120 (3).

"[W]hether the RPA applies to limit the liability of the owner of a certain property at a certain time is a question of law for the trial court." (Citation and punctuation omitted.) *Hawthorne*, supra, 278 Ga. at 117 (1). However, where the evidence conflicts regarding the purpose of the property, the fact finder must resolve the conflict. Id.

6

> Even where there is no factual dispute over the recreational and commercial activities on the property, summary judgment is improper where a fact question regarding the owner's purpose is created by objective evidence, such as proof that the owner knowingly obtained, directly or indirectly, financial benefits for the purpose of pecuniary gain from business interests on the property as a result of its decision to invite or permit the public without charge to enter the property.

(Punctuation and footnote omitted.) *Butler v. Carlisle*, 299 Ga. App. 815, 825 (5) (683 SE2d 882) (2009).

Here, the evidence presents a factual dispute as to whether Dempsey Funeral's purpose of the property was commercial or recreational.

Dempsey Funeral aptly points to evidence reflecting that the cemetery did not have gates or barriers to limit access; the cemetery was open to the public at all times; and members of the public were permitted to use the cemetery for recreational purposes, such as for picnics, jogging, walking, and walking pets. In this regard, a fact finder could conclude that the cemetery's purpose was recreational.

Nevertheless, the evidence also reflected that Dempsey Funeral operated the cemetery as a part of its for-profit business, and sold gravesite and interment rights for the burial of decedents at the cemetery in accordance with its commercial enterprise. Dempsey Funeral was "in the cemetery business" and operated four

cemeteries as part of its business. Indeed, Dempsey Funeral was paid for the interment of Martin's daughter. In addition to purchasing the daughter's gravesite, Martin's son-in-law had also entered into commercial contracts for the purchase of interment rights for himself, his wife, and Martin. The evidence would authorize a finding that family visits to the gravesites were expected and intended activities that were at least implied under the commercial purchases of the interment rights for perpetual care at the cemetery. There was also evidence that would authorize a finding that allowing access for gravesite visits furthered the commercial purposes of the cemetery and provided financial benefits related to the sales of gravesite and interment rights. In this regard, a fact finder could conclude that the purpose of the cemetery was commercial in nature.

In light of the conflicting evidence as to the purpose of the cemetery, reasonable minds could differ as to the conclusion to be reached and summary adjudication of this issue was improper. See, e.g., *Hawthorne*, supra, 278 Ga. at 117-118 (1); *Butler*, supra, 299 Ga. App. at 824-825 (5). Accordingly, "the trial court must submit the issue to the jury to perform the balancing test, considering the totality of the circumstances. Upon the jury's resolution of the factual issue, the trial court must apply the jury's finding and determine as a matter of law whether or not the RPA

8

applies to limit [Funeral Dempsey's] liability in this case." (Punctuation and footnotes omitted.) *Butler*, supra, 299 Ga. App. at 825 (5).

2. Martin next contends that the trial court erred in extending the RPA to Magnolia Landcare in this case. In this regard, she contends that the RPA does not apply to Magnolia Landcare since it was not an owner or occupier of the cemetery.

The RPA defines an "owner" as "the possessor of a fee interest, a tenant, a lessee, an occupant, or a person in control of the premises." OCGA § 51-3-21 (3). In *Bourn v. Herring*, 225 Ga. 67, 67-69 (1) (a) (166 SE2d 89) (1969), the Court applied the RPA's liability limitation to both a corporate property owner and the property owner's general manager/agent. Based upon the pleadings and record evidence regarding Magnolia Landcare's relationship with Dempsey Funeral and its involvement in the cemetery's maintenance, liability against Magnolia Landcare could be imposed based upon theories that it acted as Dempsey Funeral's agent and exercised control of the premises to the extent of its provision of care and maintenance. Cf., *Bourn*, supra, 225 Ga. at 67-69 (1) (a) (concluding that the corporation's general manager met the RPA's definition of "owner" to the extent that he served as the corporation's agent and exercised control of the premises). In this

9

regard, the RPA's limitation of liability may apply to Magnolia Landcare in the same manner that it may apply to its principal, Dempsey Funeral. Id.

Nevertheless, as explained in Division 1 above, a jury question exists as to whether the RPA applies in this case. Additionally, there remains a question of fact as to whether Magnolia Landcare is an "owner" under the RPA statute. The entry of summary judgment in favor of Magnolia Landcare on this issue was therefore erroneous.

3. Lastly, Martin argues that the trial court erred in finding that she visited the cemetery property as a licensee. Martin contends that instead she should have been classified as an invitee. Since there is conflicting evidence as to which legal status Martin should be conferred, the question must be resolved by a jury.

As the plaintiff asserting a cause of action for negligence, Martin bears the burden of establish four essential elements:

> (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

(Citations and punctuation omitted.) *Freeman v. Eichholz*, 308 Ga. App. 18, 20 (1) (705 SE2d 919) (2011). A landowner's legal duty of care owed to a person coming upon the premises varies and is dependent upon the legal status of the person entering the premises. Id. "A landowner owes the highest duty — the duty of ordinary care — to an invitee. OCGA § 51-3-1[.] A landowner owes a lesser duty — to avoid causing wilful or wanton injury — to a licensee. OCGA § 51-3-2 (b)[.]" (Citations and punctuation omitted.) Id. Thus,

> [Martin]'s status as either a licensee or an invitee determines the duty of care that [Dempsey Funeral owed her]. An invitee is someone whom a landowner, by express or implied invitation, induces or leads to come upon his premises for any lawful purpose. A licensee, on the other hand, is a person who is neither a customer, a servant, nor a trespasser, who does not stand in any contractual relation with the landowner, and who is permitted to go on the premises merely for her own interests, convenience, or gratification. The generally accepted test to determine whether one is an invitee or a licensee is whether the party coming onto the business premises had present business relations with the owner or occupier which would render [her] presence of mutual benefit to both, or was for business with one other than the owner or occupier.

(Punctuation and footnote omitted.) *Georgia Dept. of Corrections v. Couch*, 312 Ga. App. 544, 546 (1) (718 SE2d 875) (2011).

11

This Court has previously held that a person entering a cemetery to attend a funeral has the legal status of an invitee to whom the cemetery owner owes a duty of care in keeping the premises and approaches safe. See *Smith v. Poteet*, 127 Ga. App. 735, 736 (1) (195 SE2d 213) (1972). However, the legal status of a person who subsequently visits a decedent's gravesite after the occurrence of a funeral presents a different question, which has not been addressed by Georgia's appellate courts.[3]

[3] The majority of the reported decisions of other jurisdictions have concluded that a person visiting a gravesite is an invitee. See *Cedar Hill Cemetery v. Ball*, 78 F.2d 220, at * 221 (D.C. Cir. 1935) (ruling that a plaintiff was an invitee while visiting the cemetery for the purpose of decorating the grave of her grandchild); *Carter v. United States*, 2011 U.S. Dist. LEXIS 148631, *8 (III) (A) (E.D. Pa. 2011) (providing that the plaintiff was an invitee when she visited her parents' gravesites at the cemetery); *Gaita v. Laurel Grove Cemetery Co.*, 731 A.2d 1245, 1249 (N.J. Super. Ct. Law Div. 1998) (ruling that the plaintiff was a business invitee while she visited a gravesite, "because having visitors come to a grave is an expected and inextricably intertwined part of the service of providing the gravesite"); *Hetzel v. Buffalo Cemetery Assn.*, 16 A.D.2d 581, 583 (N.Y. App. Div. 1962) (ruling that the jury would have had the right to find that the injured plaintiff was an invitee when he accompanied his family on a visit to their plot in defendant's cemetery); *Foster v. Harding*, 426 P.2d 355, 361 (Okla. 1967) (ruling that a plaintiff was an invitee when she went to the cemetery and mausoleum to pay her respects to her relatives there interred). There is a minority view that a visitor to a gravesite is a licensee. See *Madison v. Woodlawn Cemetery Assn.*, 2010 Ohio App. LEXIS 4765, * 9 (III) (A) (2) (Ohio Ct. App. 2010) (ruling that an appellant who visited her uncle's gravesite at a cemetery was a licensee since there was nothing in the record to demonstrate that the cemetery obtained any economic benefit to the cemetery from appellant's presence).

In the instant case, it is undisputed that the purpose of Martin's visit was to take flowers to her daughter's grave, not to conduct any business with Dempsey Funeral. Dempsey Funeral argues that it had no business or contractual relationship with Martin. It points to evidence establishing that Martin's son-in-law executed the contract and purchased the gravesite for Martin's daughter.

Nevertheless, Martin argues that she should be afforded the legal status of an invitee because permitting visitors is simply a part of the business of a cemetery. Martin asserts that when Dempsey Funeral sold the cemetery plat for her daughter's burial, it extended an implied invitation for friends and families to visit her daughter's gravesite and that the invitation was clearly tied to the commercial purposes of the cemetery. Significantly, Martin's son-in-law testified at his deposition that Dempsey Funeral's manager had helped him select the location for the gravesite, and that he had told the manager he needed a location that was flat and easily accessible so that Martin could visit the gravesite. This testimony would authorize a finding that Dempsey Funeral had notice that Martin would be visiting the gravesite and that her visitation was an important factor considered during the commercial transaction involving the purchase of the gravesite.

Based upon the conflicting evidence as to Martin's legal status, the question must be submitted to a jury for resolution. See *Couch*, supra, 312 Ga. App. at 546 (1) (a) (ruling that "[w]hen there is conflicting evidence as to the legal status of the injured party, the question is rightfully left to the jury") (punctuation and footnote omitted). Consequently, the trial court's decision granting summary judgment in this case was erroneous.

*Judgment reversed. Ray and Branch, JJ., concur.*