S11A1515. ROBERTS et al. v. DEAL et al.
(723 SE2d 901)

HINES, Justice.

Clara Roberts, Cecil Brown, and Charles Culver ("Appellants") appeal the order of the Superior Court of Fulton County denying their petition for judicial review under the Georgia Administrative Procedure Act. For the reasons that follow, we reverse in part and dismiss the appeal in part.

Appellants were elected members of the Warren County Board of Education ("WCBE"). Local resident Cosby, along with other residents, filed a complaint with the Governor against Roberts, Brown, and Culver, alleging that they had violated OCGA § 45-10-3.[1] The

---

[1] OCGA § 45-10-3 reads:

Notwithstanding any provisions of law to the contrary, each member of all boards, commissions, and authorities created by general statute shall:

(1) Uphold the Constitution, laws, and regulations of the United States, the State of Georgia, and all governments therein and never be a party to their evasion;

(2) Never discriminate by the dispensing of special favors or privileges to anyone, whether or not for remuneration;

(3) Not engage in any business with the government, either directly or indirectly, which is inconsistent with the conscientious performance of his governmental duties;

(4) Never use any information coming to him confidentially in the performance of governmental duties as a means for making private profit;

(5) Expose corruption wherever discovered;

Governor appointed the Office of State Administrative Hearings to hear the matter, and an Administrative Law Judge found that certain acts of the Appellants constituted ethical violations under OCGA § 45-10-3, and recommended to the Governor that Appellants be removed from office. Proceeding under the authority of OCGA § 45-10-4,[2] then-Governor Perdue[3] found that: Roberts violated OCGA § 45-10-3 (1) and (8); Brown violated OCGA § 45-10-3 (8); and Culver violated OCGA § 45-10-3 (8). On August 6, 2010, the Governor ordered that Roberts, Brown, and Culver be removed from office. As set forth in OCGA § 45-10-4 and the Georgia Administrative Procedure Act, see OCGA § 50-13-1 et seq., Appellants appealed the Governor's order to the Superior Court of Fulton County, and the court allowed Cosby and the other original complainants to intervene as third-party defendants (collectively with the Governor, "Appellees"). After the superior court denied the Appellants all requested relief, they filed for discretionary review in this Court, see OCGA § 5-6-35 (a) (1), which was granted.

1. In granting the application for discretionary appeal, this Court directed the parties to address whether the appeal is moot. The parties agree that the term to which appellant Roberts had originally been elected expired on December 31, 2010. The relief requested from the superior court was that the Governor's order

---

(6) Never solicit, accept, or agree to accept gifts, loans, gratuities, discounts, favors, hospitality, or services from any person, association, or corporation under circumstances from which it could reasonably be inferred that a major purpose of the donor is to influence the performance of the member's official duties;

(7) Never accept any economic opportunity under circumstances where he knows or should know that there is a substantial possibility that the opportunity is being afforded him with intent to influence his conduct in the performance of his official duties;

(8) Never engage in other conduct which is unbecoming to a member or which constitutes a breach of public trust; and

(9) Never take any official action with regard to any matter under circumstances in which he knows or should know that he has a direct or indirect monetary interest in the subject matter of such matter or in the outcome of such official action.

[2] OCGA § 45-10-4 reads:

Upon formal charges being filed with the Governor relative to a violation of Code Section 45-10-3 on the part of a member of any such board, commission, or authority, the Governor or his designated agent shall conduct a hearing for the purpose of receiving evidence relative to the merits of such charges. The member so charged shall be given at least 30 days' notice prior to such hearing. If such charges are found to be true, the Governor shall forthwith remove such member from office and the vacancy shall be filled as provided by law. Such hearing shall be held in accordance with Chapter 13 of Title 50, the "Georgia Administrative Procedure Act," and judicial review of any such decision shall be in accordance with such chapter.

[3] After Appellants filed their petition for judicial review, Governor Perdue was succeeded by Governor Deal, and the style of this case has changed.

removing the Appellants from office be reversed, and that the order be stayed pending final adjudication of their petition, with the effective result that the Appellants would not suffer removal from office, or, inasmuch as the trial court denied the request for a stay of the Governor's order, reinstatement. That remedy will no longer benefit Roberts, and accordingly, as to her, the appeal is moot and must be dismissed. See *Allen v. Yost*, 282 Ga. 865 (655 SE2d 580) (2008); *Collins v. Lombard Corp.*, 270 Ga. 120, 121-122 (1) (508 SE2d 653) (1998); *Chastain v. Baker*, 255 Ga. 432, 433 (339 SE2d 241) (1986). But, the terms of Brown and Culver have not expired, reversal would benefit them, and the appeal is not, in toto, moot.

Appellees contend that, while the appeal may not be moot, it should be dismissed due to the doctrine of laches, essentially arguing that the Appellants were dilatory in seeking relief from the operation of the Governor's order. However, this is not the case. The Governor's order ruling that Appellants should be removed from office was signed on August 6, 2010. On August 12, 2010, Appellants filed their petition for judicial review, which contained a request for a temporary restraining order, and a separate petition for a stay of the Governor's order; the Governor and Attorney General were served the next day.[4] Although a case challenging the removal of elected officers has some of the same policy considerations which mandate that election contest cases be addressed with dispatch, see *McCreary v. Martin*, 281 Ga. 668, 669 (642 SE2d 80) (2007), the Appellants were required by OCGA § 45-10-4 to proceed under the Georgia Administrative Procedure Act, and no delay seen here warrants the imposition of the doctrine of laches. See *Plyman v. Glynn County*, 276 Ga. 426, 427 (578 SE2d 124) (2003).

2. Appellants contend that, as OCGA § 45-10-3 establishes a code of ethics for members "of all boards, commissions, and authorities created by general statute," it does not apply to those sitting on the WCBE, as that board, and all county boards of education, are created by constitutional provision, rather than by general statute. Consequently, they argue, the Governor was without authority to remove them under OCGA § 45-10-4, which provides the method by which the Governor can remove "a member of any such board" for a violation of OCGA § 45-10-3.

The constitutional provision at issue is Article VIII, Section V,

---

[4] On August 23, 2010, Appellants filed a "Motion for Hearing on Their Application for Stay and for Issuance of Rule Nisi," noting that the WCBE had instituted proceedings to fill vacancies on the Board. On September 21, 2010, this motion was denied as moot because other persons had been appointed to the offices.

Paragraph II, which reads:

> Each school system shall be under the management and control of a board of education, the members of which shall be elected as provided by law. School board members shall reside within the territory embraced by the school system and shall have such compensation and additional qualifications as may be provided by law. Any board of education to which the members are appointed as of December 31, 1992, shall continue as an appointed board of education through December 31, 1993, and the appointed members of such board of education who are in office on December 31, 1992, shall continue in office as members of such appointed board until December 31, 1993, on which date the terms of office of all appointed members shall end.

While the statement in Article VIII, Section V, Paragraph II that members of boards of education shall have "additional qualifications as may be provided by law" presumably authorizes the General Assembly to establish a mechanism for the administrative removal of board members for violation of the duties listed in OCGA § 45-10-3, the question remains whether the General Assembly has done so in OCGA § 45-10-4. Under the plain language of OCGA § 45-10-3, it has only if the WCBE is "created by general statute."

The Appellees first argue that the WCBE was so created because, despite the language of Article VIII, Section V, Paragraph II, it is, in fact, not that constitutional provision that creates the county school boards, but various sections of the Code found in OCGA § 20-2-50 et seq. However, these statutes do not create county boards of education, but govern matters contemplated by Article VIII, Section V, Paragraph II, such as terms of office and electoral qualifications, see OCGA §§ 20-2-52 and 20-2-52.1, and certain expenses and insurance coverage for board members. See OCGA § 20-2-55. Further, this Court has previously stated that county school boards are creations of the Constitution.

> In *Wheeler v. Fargo School District*, 200 Ga. 323 (37 SE2d 322), this court held that the Constitution of 1945, as it related to our Comprehensive School Law of 1919 (Ga. L. 1919, p. 288; Code, § 32-901, et seq.), changed the status of our several county boards of education from statutory to constitutional boards.

*Powell v. Price*, 201 Ga. 833, 834 (41 SE2d 539) (1947). See also *Powell v. Studstill*, 264 Ga. 109, 110 (2) (441 SE2d 52) (1994) ("The

local board of education is constitutionally empowered to manage and control the school system."); *Estes v. Jones*, 203 Ga. 686, 687 (2) (48 SE2d 99) (1948) ("The Constitution of 1945 (art. VIII, sec. V, par. I) creates a constitutional board of education for each county . . .").

Appellees next assert that we should construe the term "boards, commissions, and authorities created *by general statute*" expansively to include any and all such entities created *by the Constitution*. They cite *Board of Ed. of Hall County v. Shirley*, 226 Ga. 770 (177 SE2d 711) (1970), as an instance in which this Court held that a statutory reference to "statute" embraced the Constitution as well. However, *Shirley* is not authority for such a construction. That case dealt with the requirement that one who, in a declaratory judgment action, challenges the constitutionality of any "statute of the state, any order or regulation of any administrative body of the state, or any franchise granted by the state" serve the Attorney General with a copy of the proceeding. See OCGA § 9-4-7[5] (former 1945 Code Ann. § 110-1106 (Ga. L. 1945, pp. 137, 138)). In *Shirley*, what was at issue in the declaratory judgment action was the constitutionality of a provision of the Georgia Constitution, challenged under the United States Constitution. The opinion therein held that the "word 'statute' in the Declaratory Judgment Act . . . of *necessity* includes a provision of the Constitution of the State of Georgia." Id. (Emphasis supplied). We cannot view that passage as holding that, whenever the General Assembly uses the term "statute" it is intended to embrace the term "constitution" as well. *Shirley* was decided on narrow grounds, and described the service requirement set forth in the Declaratory Judgment Act to be "mandatory and jurisdictional." Id. at 770 (1) (Citation and punctuation omitted). In that context, to have read "statute" to *not* include the State Constitution, would have led to the absurd result that the provision could not be challenged by a declaratory judgment, and this Court may construe statutes to avoid absurd results. See *Allen v. Wright*, 282 Ga. 9, 12 (1) (644 SE2d 814) (2007); *State v. Mulkey*, 252 Ga. 201, 204 (2) (312 SE2d 601) (1984).

And, contrary to the expansive construction of the term "general

---

[5] OCGA § 9-4-7 reads:

    (a) No declaration shall prejudice the rights of persons not parties to the proceeding.

    (b) In any proceeding involving the validity of a municipal ordinance or franchise, the municipality shall be made a party and shall be entitled to be heard as a party.

    (c) If a statute of the state, any order or regulation of any administrative body of the state, or any franchise granted by the state is alleged to be unconstitutional, the Attorney General of the state shall be served with a copy of the proceeding and shall be entitled to be heard.

statute" advocated by Appellees, we must construe the Code sections strictly. OCGA §§ 45-10-3 and 45-10-4 operate so as to remove public officers from their positions, and accordingly, "we apply a narrow construction . . . consistently with . . . the traditional strict construction of forfeitures, e.g., removal from office . . . ." *Bowen v. Griffith*, 258 Ga. 162, 165 (6) (366 SE2d 293) (1988). The construction Appellees advance is anything but narrow, and must be rejected.[6]

We also note that the General Assembly is well aware of how to include members of county boards of education within the ambit of ethics legislation. See, e.g., OCGA § 21-5-3 (22) (F) (Specifying "every elected member of a local board of education" as a "public officer" for purposes of the "Ethics in Government Act."); OCGA §§ 45-5-6 (a); 45-5-6.1 (a) (Specifying members of "county, area, or independent board[s] of education" as falling under the procedures for suspension from office upon indictment, and removal upon conviction.)[7] While Appellees argue that administrative removal of members of constitutionally-created boards, commissions, and authorities is a wise policy that is consistent with our Constitution, the wisdom of such a policy is not the issue. The General Assembly has simply not pursued such an avenue in OCGA §§ 45-10-3 and 45-10-4.[8]

3. Our holding in Division 2, supra, makes consideration of the Appellants' remaining enumerations of error unnecessary.

*Judgment reversed in part and appeal dismissed in part. All the Justices concur.*

DECIDED MARCH 19, 2012.

*Elliott B. Watkins*, for appellants.
*Samuel S. Olens*, Attorney General, *Dennis R. Dunn*, Deputy

---

[6] Our decision that OCGA § 45-10-3 does not embrace entities created by the Constitution of Georgia is not affected by language in federal opinions taking an expansive view of the term "statute" as it pertains to federal authority to review state statutes. Compare, e.g., *American Federation of Labor v. Watson*, 327 U. S. 582, 592 (66 SC 761, 90 LE 873) (1946); *Hamilton v. Regents of the Univ. of Calif.*, 293 U. S. 245, 258 (55 SC 197, 79 LE 343) (1934).

[7] Similarly, the distinction between entities created by the Constitution and those created by statute often appears in the General Assembly's legislation. See, e.g., OCGA §§ 15-44-22 (4) (defining "court reporting" and the government entities for which it is done); 28-1-8 (b) (1) (addressing expenses of members of the General Assembly and service pertaining to various government entities); 48-5-7.6 (e) (1) (B) (regarding taxation of certain property and transfer to government entities).

[8] Nothing in *Stokes v. Edwards*, 272 Ga. 98 (526 SE2d 853) (2000), which involved the removal of a member of a county board of education under the supposed authority of OCGA § 45-10-4 suggests otherwise; in that case, a writ of prohibition was dismissed by the superior court and in that posture, no question of whether OCGA § 45-10-4 operated against a member of a school board was placed before this Court. See *State v. Outen*, 298 Ga. 579, 582 (714 SE2d 581) (2011).

*Attorney General, Stefan E. Ritter, Senior Assistant Attorney General, Turner, Bachman & Garrett, Judson H. Turner, Charles L. Bachman, Jr., Robert L. Fortson,* for appellees.