302 Ga. 853
FINAL COPY

S17G0692. THE MAYOR AND ALDERMEN OF THE CITY OF GARDEN CITY v. HARRIS et al.

MELTON, Presiding Justice.

This case concerns the proper statutory interpretation of the Recreational Property Act, OCGA § 51-3-20 et seq. (RPA), which shields from potential liability landowners who "either directly or indirectly invite[ ] or permit[ ] without charge any person to use the[ir] property for recreational purposes." OCGA § 51-3-23. We granted certiorari in this case to determine whether the Court of Appeals erred in concluding that a landowner would not be shielded from potential liability by the RPA where that landowner charged a fee to some people who used the landowner's property for recreational purposes, but did not charge any fee to the injured party who used the property for such purposes. The Mayor and Alderman of the City of Garden City v. Harris, 339 Ga. App. 452 (793 SE2d 628) (2016). As explained more fully below, because the plain language of the RPA shields a landowner from potential liability under the

circumstances presented here, the Court of Appeals erred in concluding otherwise, and we must reverse.

By way of background, on November 10, 2012, Willie and Kristy Harris, along with their six-year-old daughter, Riley, attended a youth football game at the Garden City Stadium, a facility owned and maintained by the City of Garden City. Willie and Kristy each paid the required $2 admission fee for spectators over the age of six. However, because Riley was only six years old, the Harrises were not required to pay an entrance fee for her, and Riley was admitted to the event free of charge. At one point during the game, while Riley was walking across the bleachers to return to her seat after visiting the concession stand, she slipped and fell between the bench seats and suffered serious injuries after falling to the ground nearly thirty feet below.

The Harrises sued the City to recover for Riley's injuries, and the City moved for summary judgment, relying on the immunity provided by the RPA. Specifically, OCGA § 51-3-23 states:

> Except as specifically recognized by or provided in Code Section 51-3-25, an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes does not thereby: (1) Extend any assurance that the premises are safe for any purpose; (2) Confer upon such

person the legal status of an invitee or licensee to whom a duty of care is owed; or (3) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

And, with respect to the exceptions specifically recognized in OCGA § 51-3-25, that Code section states in relevant part:

> Nothing in this article limits in any way any liability which otherwise exists . . . [f]or injury suffered in any case when the owner of land charges the person or persons who enter or go on the land for the recreational use thereof. . . .

OCGA § 51-3-25 (2).

The City argued that, because Riley was not one of the persons who was charged a fee to use the City's property for recreational purposes, the City could not be held liable for Riley's injuries as a matter of law. However, the trial court denied the City's motion for summary judgment, and the Court of Appeals affirmed the trial court's ruling on appeal.

In order to determine whether the Court of Appeals erred in upholding the trial court's ruling, we must analyze the relevant provisions of the RPA mentioned above. In interpreting these statutory provisions, we must presume

> that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in

3

which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would . . . [and] if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citations and punctuation omitted.) Deal v. Coleman, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013).

With these principles in mind, a natural reading of the plain language of OCGA § 51-3-23 indicates that a landowner remains free from potential liability to any individual person who is injured on the landowner's property who has been allowed to use the property for recreational purposes free of charge. Indeed, a landowner

who either directly or indirectly invites or permits without charge *any person* to use the property for recreational purposes does not thereby . . . [c]onfer upon *such person* the legal status of an invitee or licensee to whom a duty of care is owed; or . . . [a]ssume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

(Emphasis supplied.) The statute specifically and unambiguously references "any person" who is not charged a fee to use a landowner's property for

4

recreational purposes as being such a "person" to whom the landowner does not owe a duty of care. Because the statutory text of OCGA § 51-3-23 is clear and unambiguous, we attribute to the statute its plain meaning of shielding landowners from potential liability to individual persons whom they have invited to use their property for recreational purposes free of charge, "and our search for statutory meaning is at an end." Deal, supra, 294 Ga. at 173 (1) (a).

Our interpretation of the plain meaning of OCGA § 51-3-23 is not diminished when the statute is considered in the context of the exceptions to the statute set forth in OCGA § 51-3-25. Again, pursuant to OCGA § 51-3-25 (2): "Nothing in this article limits in any way any liability which otherwise exists . . . [f]or injury suffered *in any case when the owner of land charges the person or persons who enter or go on the land for the recreational use thereof*[.]" (Emphasis supplied.) Read in conjunction with the other provisions of the statute, it is plain that, in any case where the injured party is a person who has been charged a fee to use the landowner's property for recreational purposes, the landowner would not be immune from potential liability to such paying persons, because the landowner only receives the protections of OCGA § 51-3-23 with respect to those persons who have not been charged a fee to use the property for

recreational purposes. This is the case because any individual person who has been or persons who have been charged a fee to use the landowner's property for recreational purposes obviously could not qualify as "any person [who has been invited] to use the property for recreational purposes" "without charge" and to whom the landowner could not be liable based on the plain language of OCGA § 51-3-23.[1]

This is also consistent with the stated legislative purpose of the RPA, which "is to encourage owners of land to make land and water areas available

---

[1] Contrary to the assertions of the dissent, we have done nothing in our ruling today to overrule any of our prior case law. We do not specifically address any of the case law referenced by the dissent because (1) not a single one of those cases involves a scenario where some members of the public were charged a fee to use a landowner's property for recreational purposes but other injured persons were not, and (2) the plain language of the RPA simply controls here. Deal, supra, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.") (punctuation omitted). In any event, to adopt the position of the dissent would require us to rewrite the RPA to insert additional language about how many members of the "general public" must be charged a fee before a landowner would no longer enjoy immunity from liability with respect to someone injured on the property who used the land for recreational purposes but was not charged a fee. This Court is forbidden from engaging in such a task. State v. Fielden, 280 Ga. 444, 448 (629 SE2d 252) (2006) ("[U]nder our system of separation of powers this Court does not have the authority to rewrite statutes.").

6

to the public for recreational purposes by *limiting* the owners' liability toward persons entering thereon for recreational purposes." (Emphasis supplied.) OCGA § 51-3-20. A landowner's liability is limited to those injured persons who have paid to use the landowner's property for recreational purposes, and there is nothing in the natural reading of the plain text of OCGA §§ 51-3-23 and 51-3-25 to suggest that the legislature intended instead to leave in place the potential liability of landowners to persons who have *not* paid to use an owner's property for recreational purposes just because the landowner would be potentially liable to others who have paid to use the property for such purposes. Nothing in the RPA requires that *all* participants in recreational activities on a landowner's property must enter free of charge for the landowner to enjoy immunity as to any of them. Indeed, providing free admission on a select basis (for example, by inviting special groups such as the Boy Scouts or Girl Scouts, honor roll students, veterans, etc., to events where others have paid to enter) is a common practice that fits within the stated legislative purpose of the RPA "to encourage owners of land to make land and water areas available to the public for recreational purposes" while at the same time limiting the landowner's potential legal liability to only the "person or persons" who the landowner

7

"charges . . . [to] enter or go on the land for the recreational use thereof." OCGA §§ 51-3-20 and 51-3-25.

Because the injured party in this case was not charged a fee to use the City's property for recreational purposes, the City was shielded from liability for that party's injuries as a matter of law by the RPA. Accordingly, the City was entitled to summary judgment in this case, and the Court of Appeals erred in concluding that it was not.

Judgment reversed. All the Justices concur, except Benham and Hunstein, JJ., who dissent.

HUNSTEIN, Justice, dissenting.

For decades the Georgia courts have held that a landowner is shielded from liability pursuant to OCGA § 51-3-23 only where its property is open to the public for a recreational purpose *without charge*. Here, there is no question that the City's football stadium was open to the public for a recreational purpose and that the City charged an admission fee to enter the premises. Applying OCGA § 51-3-25 (2) and Georgia's well-established case law, I would conclude that the City is not exempted from liability under the RPA. The contrary decision reached by the majority circumvents the limitations placed on the RPA's liability waiver by the General Assembly and effectively overturns well-settled case law without explanation. Accordingly, I respectfully dissent.

"As in all appeals involving the construction of statutes, our review is conducted under a de novo standard." Hankla v. Postell, 293 Ga. 692, 693 (749 SE2d 726) (2013). "A statute draws its meaning, of course, from its text."

(Citation omitted.) <u>Chan v. Ellis</u>, 296 Ga. 838, 839 (770 SE2d 851) (2015). "The common and customary usages of the words are important, but so is their context." (Citation omitted.) <u>Tibbles v. Teachers Retirement System of Ga.</u>, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." (Citation and punctuation omitted.) <u>Zaldivar v. Prickett</u>, 297 Ga. 589, 591 (1) (774 SE2d 688) (2015). With these principles in mind, I turn to the relevant portions of the RPA.

The RPA was first drafted and published by the Council of State Governments in 1965, explaining that the act "is designed to encourage availability of private lands by limiting the liability of owners to situations in which they are *compensated for the use of their property* and those in which injury results from malicious or willful acts of the owner." (Emphasis supplied.) Council of State Governments, Suggested State Legislation 150 (24th ed. 1965). A few months later, the General Assembly adopted the proposed legislation,

virtually unchanged, underlining the importance of encouraging landowners to open their lands to the general public free of charge. See OCGA § 51-3-20 ("The purpose of this article is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting the owners' liability toward persons entering thereon for recreational purposes."). When looking at the relevant provisions of the RPA, we must keep in mind that it is a statute in derogation of common law, and thus, must be strictly and narrowly construed.[2] Couch v. Red Roof Inns, 291 Ga. 359, 374 (729 SE2d 378) (2012) ("[A] statute in derogation of the common law [should] be construed strictly by the courts." (citation omitted) (Benham, J., dissenting)).

The General Assembly codified the RPA's liability waiver in OCGA § 51-3-23, which provides:

---

[2] At common law, persons classified as licensees or invitees were entitled to legal protection because the landowner had a duty of care to them, see OCGA §§ 51-3-1 to 51-3-2 (2017), which this Court has recognized, see Atlanta & West Point R. Co. v. Wise, 190 Ga. 254, 256-257 (9 SE2d 63) (1940), Martin v. Johnson-Lemon, 271 Ga. 120, 123 (516 SE2d 66) (1999), Johnson Street Properties v. Clure, 302 Ga. 51, 65 (805 SE2d 60) (2017). However, recreational-use statutes, like the RPA, "carve out an area of land-possessor liability from the common law of tort and specify instead a statutory standard for liability." Restatement (Third) of Torts: Physical and Emotional Harm § 51 cmt. q (Am. Law. Inst. 2012).

Except as specifically recognized by or provided in Code Section 51-3-25, an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes does not thereby:

(1) Extend any assurance that the premises are safe for any purpose;

(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed; or

(3) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

Id. This liability waiver is subject to a companion statute, OCGA § 51-3-25, which provides:

Nothing in this article limits in any way any liability which otherwise exists:

. . .

(2) For injury suffered in any case when the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that, in the case of land leased to the state or a subdivision thereof, any consideration received by the owner for the lease shall not be deemed a charge within the meaning of this Code section.

Id.

The majority concludes, after ostensibly applying the "plain language" of the above-quoted provisions without citation to meaningful authority, that the liability waiver of OCGA § 51-3-23 applies (and, consequently, that OCGA § 51-3-25 does not) because Riley did not pay the admission fee. At first glance,

4

such a reading appears correct.  However, simply parsing the language of OCGA § 51-3-23 does not end the analysis.  The plain language of that Code section — indeed the first sentence — states that the RPA's general liability protection is expressly *controlled* by the provisions of OCGA § 51-3-25.  See OCGA § 51-3-23 ("Except as specifically recognized by or provided in Code Section 51-3-25 . . . .").  Accordingly, we must read the two statutes together, see Mooney v. Webster, 300 Ga. 283, 290 (794 SE2d 31) (2016), giving effect to all parts of the statute, see Bibb County v. Hancock, 211 Ga. 429, 440 (86 SE2d 511) (1955), so as to avoid "a construction that makes some language mere surplusage," Slakman v. Continental Cas. Co., 277 Ga. 189, 191 (587 SE2d 24) (2003).

Turning to the relevant portion of OCGA § 51-3-25, the liability protections of the RPA do not apply "[f]or injury suffered in any case when the owner of land charges the person or persons who enter or go on the land for the recreational use thereof."  Id. at (2).  Georgia courts have consistently held that this provision is applicable where (1) the property was open to the public, (2) the property was used for a recreational purpose, and (3) the landowner charged

5

a fee in exchange for permission for the public to enter the premises. See Anderson v. Atlanta Committee for the Olympic Games, 273 Ga. 113, 114 (1) (a) (537 SE2d 345) (2000) ("The RPA limits, with certain exceptions, the liability of an owner of land who has made property available without charge to the public for recreational purposes."); Cedeno v. Lockwood, Inc., 250 Ga. 799 (301 SE2d 265) (1983) (interpreting OCGA § 51-3-25), disapproved on other grounds, Atlanta Committee for the Olympic Games v. Hawthorne, 278 Ga. 116, 118, n.3 (598 SE2d 471) (2004). See also Stone Mountain Mem. Assn. v. Amestoy, 337 Ga. App. 467 (788 SE2d 110) (2016); Gayle v. Frank Callen Boys & Girls Club, 322 Ga. App. 412 (745 SE2d 695) (2013); Martin v. Dempsey Funeral Svcs. of Ga., 319 Ga. App. 343, 345 (735 SE2d 59) (2012); Carroll v. City of Carrollton, 280 Ga. App. 172 (633 SE2d 591) (2006); Spivey v. City of Baxley, 210 Ga. App. 772, 774 (437 SE2d 623) (1993); Edmondson v. Brooks County Bd. of Ed., 205 Ga. App. 662, 664 (423 SE2d 413) (1992).

The parties agree that the first two factors are met; this leaves open the question of whether the landowner charged a fee in exchange for permission for the public to enter the premises. The majority concludes that this provision is

only satisfied where the injured party is "the person or persons" who have been charged to enter. This, however, is but one way to interpret this portion of OCGA § 51-3-25 (2). At issue is whether the phrase "charges the person or persons who enter or go on the land" refers specifically to the *injured* person who has been charged or, instead, refers to a landowner who generally charges for entry onto the land. Our precedent clearly answers this question.

Almost 35 years ago, this Court held in Cedeno that, "[a]s a prerequisite to immunity under the RPA, the owner cannot charge a fee for admission *to the property*." 250 Ga. at 801 (2) (citing OCGA § 51-3-25) (emphasis supplied). See also City of Tybee Island v. Godinho, 270 Ga. 567 (511 SE2d 517) (1999) ("The RPA, with certain exceptions, shields property owners from tort liability *for property* that they permit the public to use without charge for 'recreational purposes'" (emphasis supplied)), disapproved on other grounds, Hawthorne, 278 Ga. 116. Later, the Court of Appeals reiterated this principle in Carroll, holding that "'[t]he important criterion is the purpose for which the public is permitted on the property,' i.e., whether '*the property* is open to the public for recreational

purposes *free of charge*.'" (Citations and punctuation omitted; emphasis supplied.) 280 Ga. App. at 175.

Consistent with these long-standing decisions, as well as a natural reading of the statute, I conclude that it is the fee associated with the use of *the property* that controls our analysis, not whether a specific individual was charged.[3] Such a resolution of the ambiguity between OCGA §§ 51-3-23 and 51-3-25 (2) is consistent with the requirement that we narrowly construe the liability waiver, which abrogates the common law right of an invitee to sue a landowner.

---

[3] Even in "business interest" cases, where the recreational purpose of the property is questioned, this Court's analysis is not controlled by the individual plaintiff. See Anderson, 273 Ga. at 117 (2) (the test to determine whether an activity is "recreational" despite possible profit motive of owner "does not preclude consideration of the user's subjective assessment of the activity," though "the user's assessment is not the controlling factor") (punctuation omitted) (citing Quick v. Stone Mountain Mem. Assn., 204 Ga. App. 598, 599 (420 SE2d 36) (1992) and Hogue v. Stone Mountain Mem. Assn., 183 Ga. App. 378 (358 SE2d 852) (1987)); Godinho, 270 Ga. at 568, n.12 (plaintiff's admission that she used sidewalk for recreational purpose considered, but not determinative factor in concluding that RPA shielded city from liability because public allowed onto city sidewalk for recreational purpose). Instead, the balancing test used by this Court in such cases requires examination of "all social and economic aspects of the activity" that occur *on the property* onto which the public was invited, including "the intrinsic nature of the activity, the type of service or commodity offered to the public, and the activity's purpose and consequence." Anderson, 273 Ga. at 117 (2). See also Carroll, 280 Ga. App. at 175-176, n.3 (where the parties do not dispute the purely recreational purpose of the property, then no need to review individual plaintiff's use of premises).

8

Furthermore, this construction maintains the liability shield envisioned by the General Assembly in OCGA § 51-3-23, encouraging landowners to allow the public to use their lands free of charge, while also protecting the waiver exemption codified in OCGA § 51-3-25 (2). See Malphurs v. State, 336 Ga. App. 867, 869 (785 SE2d 414) (2016) ("When the courts are called upon to determine if there is a conflict between statutes they are required to undertake to construe them together and seek to give full effect to both laws as representing all of the legislative intention.") (citation and punctuation omitted).

Finally, my interpretation is bolstered by the General Assembly's inclusion of the phrase "in any case" in OCGA 51-3-25 (2). This all-encompassing phrase illustrates the General Assembly's intent to grant greater liability rights to the public when a landowner assesses a fee to enter onto its land. In other words, where a landowner levies a charge in exchange for permission to enter its land for a recreational purpose, then the landowner is liable for an injury suffered on its property *in any case*, no matter whether that

person paid the admission fee or not.[4] This construction further avoids the patently absurd result of permitting landowners to cherry-pick groups of potential plaintiffs, resulting in similarly injured individuals having unequal rights of recovery. See Roberts v. Deal, 290 Ga. 705, 709 (723 SE2d 901) (2012) (explaining that "this Court may construe statutes to avoid absurd results") (citing Allen v. Wright, 282 Ga. 9, 12 (1) (644 SE2d 814) (2007)).

In this case, the record clearly supports the trial court's finding that the public was charged a fee to enter the premises. See OCGA § 51-3-21 (1) (defines a "charge" as "the admission price or fee asked in return for invitation or permission to enter or go upon the land"). Compare Stone Mountain Mem. Assn. v. Herrington, 225 Ga. 746 (1) (171 SE2d 521) (1969) (where public was paid a fee to park their cars but not to enter the premises, parking fee did not qualify as charge pursuant to RPA); Brannon v. Stone Mountain Mem. Assn., 165 Ga. App. 120 (299 SE2d 176) (1983) (same); South Gwinnett Athletic

---

[4] By this interpretation, I do not mean to imply that a landowner would lose the RPA's liability protection simply by charging a single person. Indeed, the focus of our case law has been on a landowner that generally charges a fee for permission to enter its land for a recreational purpose.

10

Assn. v. Nash, 220 Ga. App. 116 (1) (469 SE2d 276) (1996) (baseball registration fee did not qualify as a charge under RPA).

Pursuant to OCGA § 51-3-25 (2), and applying Georgia's well-established case law, I would conclude that by generally charging a fee for admission, the City is excluded from the RPA's liability protection, no matter that the individual injured was relieved from paying the admission fee because of her age. If the City wished to be protected by the RPA's liability waiver, it could have allowed all Rebel Bowl spectators to enter the stadium free of charge as the City does for its regular season games. See Spivey, 210 Ga. App. at 775 (concluding that "the RPA applies to spectators at athletic events, when no admission charge is imposed"). Consequently, I would affirm the Court of Appeals' determination that the City was exempted from the RPA's protection pursuant to OCGA § 51-3-25 (2).

I am authorized to state that Justice Benham joins me in this dissent.

Decided January 29, 2018.

Certiorari to the Court of Appeals of Georgia — 339 Ga. App. 452.

<u>Oliver Maner, Patrick T. O'Connor, James P. Gerard, David Bobo Mullens III</u>, for appellant.

<u>Karsman, McKenzie & Hart, Christopher D. Britt</u>, for appellees.