**FIRST DIVISION**
**BARNES, P. J.,**
**LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 18, 2024**

# In the Court of Appeals of Georgia

A23A1379. MANCUSO v. CADLES OF WEST VIRGINIA, LLC.

BARNES, Presiding Judge.

Following the trial court's entry of an order reviving a dormant judgment entered against him, Peter B. Mancuso appeals, contending that the order should be reversed because he was never properly served with a copy of the scire facias to revive the judgment. According to Mancuso, service upon him of the scire facias was defective and did not satisfy the procedural requirements of OCGA § 9-12-63 because he was served by a private process server rather than by the sheriff in the county where he resided. For the reasons discussed below, we agree with Mancuso that service of the scire facias by a private process server was insufficient. Accordingly,

we reverse the trial court's order reviving the judgment and remand the case to the trial court for further proceedings consistent with this opinion.[1]

The pertinent facts are undisputed. On February 20, 2013, Multibank 2009-1 RES ADC Venture, LLC obtained in the Superior Court of Henry County a judgment against Mancuso in the amount of $65,492.63. Execution thereafter was entered on the judgment on July 15, 2014. Several years later, after the judgment became dormant,[2] Cadles of West Virginia, LLC, as alleged assignee of Multibank, filed a proposed scire facias to revive the judgment in the same superior court. On October 31, 2022, the superior court clerk issued a scire facias to revive the dormant judgment,[3] which was served on Mancuso by a private process server. Mancuso filed a verified response to the scire facias, contending, among other things, that service of the scire facias was insufficient under OCGA § 9-12-63 because he was not served

---

[1] In light of our decision in this case, we do not reach several additional claims of error raised by Mancuso.

[2] See OCGA § 9-12-60 (a) (addressing when a judgment becomes dormant).

[3] The superior court clerk previously issued a scire facias to revive the judgment on July 21, 2022, but a copy of the scire facias was not personally served on Mancuso at least 20 days before the hearing scheduled for November 14, 2022, as required by OCGA § 9-12-63, leading the clerk to issue a second scire facias on October 31, 2022. Only the second scire facias is at issue in this appeal.

by the sheriff in the county where he resided.[4] Following a hearing, the trial court entered its order reviving the dormant judgment on February 6, 2023. In its order, the court concluded that the scire facias had been "duly served" on Mancuso.

On appeal, Mancuso contends that the trial court erred in reviving the dormant judgment because OCGA § 9-12-63 required that he be personally served with a copy of the scire facias by the county sheriff rather than by a private process server.

When interpreting the meaning of a statute,

> we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would and if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citation and punctuation omitted.) *Mayor & Alderman of the City of Garden City v. Harris*, 302 Ga. 853, 854-855 (809 SE2d 806) (2018). "When we construe statutory

---

[4] Mancuso incorporated his verified response to the scire facias issued on July 21, 2022 into his verified response to the second scire facias issued on October 31, 2022. See supra footnote 3.

authority on appeal, our review is de novo." (Citation and punctuation omitted.) *In re Estate of Jones*, 346 Ga. App. 877, 879 (2) (815 SE2d 599) (2018).

Mindful of these principles, we turn to the statutory framework pertinent to this case. Title 9, Chapter 12, Article 3 of the Official Code of Georgia Annotated addresses the dormancy and revival of judgments ("Revived Judgment Code"). OCGA § 9-12-60 (a) and (b) specify when a judgment becomes dormant, and construing those subsections, we have explained that "a judgment becomes dormant seven years from the date of the last entry upon the execution docket." (Citation and punctuation omitted.) *First Merit Credit Svcs. v. Fairway Aviation*, 359 Ga. App. 829, 833 (2) (860 SE2d 126) (2021). Once a judgment becomes dormant, it "may be renewed or revived . . . by scire facias, at the option of the holder of the judgment, within three years from the time it becomes dormant." OCGA § 9-12-61.[5] "A scire facias resembles a summons and directs the defendant to appear in the issuing court on a certain date and to show cause why the identified judgment should not be revived and an execution be issued." *Popham v. Jordan*, 278 Ga. App. 254, 254-255

---

[5] "OCGA §§ 9-12-60 and 9-12-61 . . . operate in tandem as a ten-year statute of limitation for the enforcement of Georgia judgments, such that although a judgment becomes dormant seven years from the date of the last entry upon the execution docket, it does not expire until ten years after that date." (Citations and punctuation omitted.) *First Merit Credit Svcs.*, 359 Ga. App. at 833 (2).

4

(1) (628 SE2d 660) (2006). OCGA § 9-12-63 sets out the procedural requirements for issuance and service of a scire facias, and that statute provides:

> A scire facias to revive a dormant judgment in the courts must issue from and be returnable to the court of the county in which the judgment was obtained. It shall be directed to all and singular the sheriffs of this state and shall be signed by the clerk of such court who shall make out copies thereof. An original and a copy shall issue for each county in which any party to be notified resides. *A copy shall be served by the sheriff of the county in which the party to be notified resides* 20 days before the sitting of the court to which the scire facias is made returnable and the original shall be returned to the clerk of the court from which it issued.

(Emphasis supplied.) The service requirements imposed by OCGA § 9-12-63 must be satisfied before a dormant judgment may be revived. See OCGA § 9-12-64 ("In all cases of scire facias to revive a judgment, *when service has been perfected*, the judgment may be revived on motion at the first term without the intervention of a jury unless the person against whom judgment was entered files an issuable defense under oath, in which case the defendant in judgment shall be entitled to a trial by jury as in other cases.") (emphasis supplied). See *Popham*, 278 Ga. App. at 255 (1) (affirming trial court's denial of petition seeking to revive dormant judgment, where scire facias

5

was not issued and served in compliance with the procedural requirements of OCGA § 9-12-63).

In the present case, it is undisputed that Mancuso was served with a copy of the scire facias by a private process server. But OCGA § 9-12-63 expressly provides that the copy of the scire facias "shall be served by the sheriff of the county in which the party to be notified resides." "The general rule is that 'shall' is recognized as a command, and is mandatory," and "[w]e cannot by construction add to, take from, or vary the meaning of unambiguous words in a statute." (Citations and punctuation omitted.) *City of Albany v. GA HY Imports*, 348 Ga. App. 885, 891 (825 SE2d 385) (2019). Accordingly, by its plain and unambiguous language, OCGA § 9-12-63 required that Mancuso be served by the sheriff of the county in which he resided.

Although Mancuso was not served by the county sheriff, Cadles contends that service nevertheless was proper because OCGA § 9-11-4 (c) of the Civil Practice Act ("CPA"), OCGA § 9-11-1 et seq., authorizes service of a summons by a private process server appointed by the trial court,[6] and the process server who served

---

[6] See OCGA § 9-11-4 (c) (3) (authorizing service by "[a]ny citizen of the United States specially appointed by the court for that purpose"); (c) (4) (authorizing service by "[a] person who is not a party, not younger than 18 years of age, and has been appointed by the court to serve process or as a permanent process server").

Mancuso with the scire facias was so appointed. In relying upon OCGA § 9-11-4 (c) as a method for effecting service, Cadles emphasizes that OCGA § 9-12-62 of the Revived Judgment Code provides that "[s]cire facias to revive a judgment is not an original action but is the continuation of the action in which the judgment was obtained." Cadles argues that because the scire facias "is a continuation of the action in which the judgment was obtained, then likewise it would stand to reason that a [s]cire [f]acias could be served in the same manner that the underlying complaint and summons could be served" under the CPA.

We are unpersuaded by Cadles's argument. The fact that a scire facias is treated as the continuation of the suit in which the underlying judgment was obtained does not override the specific procedural requirements set out in OCGA § 9-12-63 for service of the scire facias. See *Atwood v. Hirsch Bros.*, 123 Ga. 734, 736 (51 SE 742) (1905) (rejecting "argument that, since scire facias is but the continuation of the suit in which the judgment was obtained," the same rules for personal service applicable to civil actions should apply to service of the scire facias);[7] *Popham*, 278 Ga. App. at 255 (1) (reflecting that a judgment cannot be revived if the specific service

---

[7] Although *Atwood* was decided under a former version of the Revived Judgment Code (see Civil Code of 1895, §§ 5380, 5381), the pertinent statutory language is materially the same. See *Atwood*, 123 Ga. at 735-736.

7

requirements of OCGA § 9-12-63 are not satisfied). Any other interpretation of the statutory scheme would render the specific service requirements of OCGA § 9-12-63 mere surplusage and meaningless, a result we must avoid. See *Kelley v. Cincinnati Ins. Co.*, 364 Ga. App. 612, 615 (1) (a) (876 SE2d 51) (2022) (noting that "we must construe statutes to give sensible and intelligent effect to all of their provisions and to refrain from any interpretation which renders any part of the statutes meaningless") (citation and punctuation omitted).

Moreover, Cadles's argument fails to take account of OCGA § 9-11-81, which provides that the CPA "shall apply to all special statutory proceedings except to the extent that specific rules of practice and procedure in conflict herewith are expressly prescribed by law." The process for reviving dormant judgments set out in the Revived Judgment Code is a "special statutory proceeding" within the meaning of OCGA § 9-11-81, given that the process for reviving dormant judgments is created by statute and differs from a standard civil action. See OCGA § 9-12-60 et seq. (setting out statutory scheme for revival of judgments); OCGA § 9-12-62 (quoted supra). See also *Hardin Constr. Group v. Fuller Enterprises*, 265 Ga. 770, 771 (462 SE2d 130) (1995) (concluding that the arbitration confirmation process set out in the Georgia Arbitration Code is a "special statutory proceeding" under OCGA § 9-11-81

8

after explaining that an arbitration confirmation proceeding is "not a civil action" because the confirmation process is commenced and heard in the same manner as a motion and "an application for confirmation is not a complaint which initiates a civil action in the superior court") (citation and punctuation omitted); *Sherman v. Dev. Auth. of Fulton County*, 321 Ga. App. 550, 554 (1) (739 SE2d 457) (2013) (noting that a bond validation proceeding, "as a proceeding that is created by statute, constitutes a 'special statutory proceeding' within the meaning of OCGA § 9-11-81"). Thus, under OCGA § 9-11-81, the CPA is applicable to proceedings for reviving judgments, "except to the extent that specific rules of practice and procedure in conflict [t]herewith are expressly prescribed by [the Revived Judgment Code]."

Such a conflict exists in this case. The specific rule of practice and procedure set out in OCGA § 9-12-63 of the Revived Judgment Code for service of a copy of the scire facias (namely, service by the sheriff of the county where the party to be notified resides) is narrower and conflicts with the broader rule of practice and procedure for service of a summons set out in OCGA § 9-11-4 (c) of the CPA. Consequently, pursuant to OCGA § 9-11-81, the specific rule for service set out in OCGA § 9-12-63 controls over OCGA § 9-11-4 (c), such that service of a copy of the scire facias must be effectuated by the county sheriff rather than a private process

9

server appointed by the trial court. See *Woodruff v. Morgan County*, 284 Ga. 651, 652 (1) (670 SE2d 415) (2008) (concluding that the Quiet Title Act was a "special statutory proceeding" under OCGA § 9-11-81 and that its special rules of practice and procedure for an in rem quiet title action prevailed over "the procedures that might otherwise be sufficient to effect proper service and require that a responsive pleading be filed under the Civil Practice Act"); *In re Estate of Jones*, 346 Ga. App. at 881 (2) (concluding that proceedings for the probate of a will were "special statutory proceedings" under OCGA § 9-11-81 and that the special procedures for attacking an order admitting a will to probate found in OCGA §§ 53-5-50 and 53-5-51 prevailed over the CPA's more restrictive procedure for setting aside a judgment found in OCGA § 9-11-60).

Because OCGA § 9-12-63 mandated that Mancuso be served by the sheriff of the county in which he resided and he was not served in that manner, service was never properly perfected. See *Lewis v. Waller*, 282 Ga. App. 8, 13 (2) (637 SE2d 505) (2006) (explaining that "if service upon a defendant was made by an unauthorized person, the purported service was a nullity and was never properly perfected") (citation and punctuation omitted). Accordingly, given that service of a copy of the scire facias was not properly perfected on Mancuso under OCGA § 9-12-63, the trial

court erred in reviving the dormant judgment. See OCGA § 9-12-64 (judgment subject to revival "when service has been perfected"); *Popham*, 278 Ga. App. at 255 (1) (concluding that petition to revive judgment was properly denied for failure to comply with OCGA § 9-12-63, where, among other things, the "record [did] not demonstrate that the DeKalb County sheriff served [the respondent] a copy of any scire facias, as required by the statute").

*Judgment reversed and case remanded with direction. Land and Watkins, JJ., concur.*