**SECOND DIVISION**
**DOYLE, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 23, 2025**

# In the Court of Appeals of Georgia

A25A1038. PARKES et al. v. KEMP et al.

DAVIS, Judge.

Nabilah Parkes, Cathy Woolard, and Randal Mangham ("petitioners") seek review of the trial court's dismissal of their petition seeking a writ of mandamus compelling Governor Brian Kemp to investigate allegations of ethical misconduct that they levied against three members of the State Election Board in three separate letters to the Governor. The trial court reasoned that, under OCGA § 45-10-4, the Governor is only required to hold a hearing to investigate allegations of ethical misconduct when "formal charges" are filed against Board members, and it concluded the letters the petitioners sent to the Governor in this case did not constitute "formal charges."

Upon a review of the relevant statutory framework, we agree and affirm the dismissal of the petition.

> A motion to dismiss for failure to state a claim
>
> should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Citation omitted.) *Quarters Decatur, LLC v. City of Decatur*, 347 Ga. App. 723, 724 (1) (820 SE2d 741) (2018). Additionally, mandamus relief is "an extraordinary remedy to compel a public officer to perform a required duty when there is no other adequate legal remedy. To obtain such relief, a party must establish that (1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief." (Citations and punctuation omitted.) Id.

The record shows that the petitioners are two sitting Georgia State Senators[1] and a former chairperson of the Fulton County Board of Elections. In August 2024, the petitioners either hand-delivered or mailed three separate letters to Governor Kemp that alleged that three members of the State Election Board committed various acts of misconduct that warranted their disqualification from office under Georgia law. It appears from the record that the Governor has not taken any action in response to the letters.

The petitioners filed the instant petition for a writ of mandamus, seeking an order compelling the Governor to investigate the alleged misconduct by the State Election Board members. In response, the Governor filed a motion to dismiss, arguing in substantial part that the letters were not "formal charges" under OCGA § 45-10-4 which would require him to hold an evidentiary hearing or conduct an investigation into the misconduct. Following a hearing, the trial court agreed with the Governor and dismissed the petition, and the petitioners now appeal.

---

[1] Although Mangham was only a candidate for office at the time the petition was filed, we take notice of official public records showing that Mangham was since elected to the Georgia Senate. See OCGA § 24-2-201.

The crux of this case concerns the proper interpretation of OCGA § 45-10-4, which provides in relevant part that "[u]pon *formal charges* being filed with the Governor relative to a violation of [the statutory Code of Ethics for Board members] on the part of a member of [the Board], the Governor or his designated agent *shall* conduct a hearing for the purpose of receiving evidence relative to the merits of such charges." (Emphasis supplied.) The question is thus whether the three letters sent by the petitioners constituted "formal charges" such that the Governor (or his agent) was required[2] to hold a hearing to investigate those charges. We ultimately decide that they were not because we conclude that the term "formal charges" does not cover accusations by members of the general public.[3]

As always,

> [u]nder our well-established rules of statutory construction, we presume
> that the General Assembly meant what it said and said what it meant. To

---

[2] See, e.g., *Glass v. City of Atlanta*, 293 Ga. App. 11, 15 (2) (a) (666 SE2d 406) (2008) ("[I]n its ordinary signification 'shall' is a word of command, and the context ought to be very strongly persuasive before that word is softened into a mere permission.") (citation omitted).

[3] The petitioners do not allege that they sent the letters in any of their official capacities but only in their capacities as citizens of Georgia, and, in any event, they do not argue that their former or current offices provide them with any particularized ability to bring charges beyond that of a private citizen.

4

that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Indeed, where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends. Only if the text of the statute presents an ambiguity do we apply the canons of statutory construction applicable to resolving ambiguities.

(Citations and punctuation omitted.) *McBrayer v. Scarborough*, 317 Ga. 387, 393 (2) (c) (893 SE2d 660) (2023). We further note that we must construe OCGA § 45-10-4 "strictly" because the statute "operate[s] so as to remove public officers from their positions, and accordingly, we apply a narrow construction consistently with the traditional strict construction of forfeitures, e.g., removal from office." (Citation and punctuation omitted.) *Roberts v. Deal*, 290 Ga. 705, 710 (2) (723 SE2d 901) (2012).

We start by noting that the statute does not define what constitute "formal charges," nor does it delineate which persons or entities are allowed to bring such charges, and this issue has not been addressed by our case law. "Thus, we must examine the meaning of those words in their broader context, including other legal authorities which may inform our understanding of the phrase's meaning in this

statute." (Citation omitted.) *GeorgiaCarry.Org, Inc. v. Atlanta Botanical Garden, Inc.*, 306 Ga. 829, 834-835 (3) (834 SE2d 27) (2019).

Black's Law Dictionary defines "formal" as "of, relating to, or involving established procedural rules, customs, and practices[,]" while it defines a "charge" as "a formal accusation of an offense[.]" (11th ed. 2019). In the criminal context, the phrase "formal charges" naturally refers to the point when the State files an indictment or accusation against the defendant, thereby initiating criminal proceedings. See, e.g., *State v. White*, 282 Ga. 859, 861 (2) (a) (655 SE2d 575) (2008) (for speedy trial purposes, "formal charges" were filed against the defendant when a grand jury returned an indictment against the defendant). The phrase "formal charges" is also used in the context of investigations by the Judicial Qualifications Commission ("JQC"). Under OCGA § 15-1-21 (e) (3) (A), the JQC is responsible for, among other things, "[a]djudicating formal charges filed by the investigative panel." The term "formal charges" is defined by the JQC Rules as "the document that charges the judge with specific acts of misconduct or with a specific incapacity." Rules of the Judicial Qualifications Commission, [Terminology]. Private citizens are not empowered to file "formal charges" against a judge – rather, they may send

"complaints"[4] to the JQC Director to "receive and screen," after which the Director is authorized by law to "file formal charges when directed to do so by the Investigative Panel." JQC Rule 4 (B) (1).

Inherent in both the dictionary definition of "formal charges" and the use of that phrase across our law is the concept that the bringing of those charges is the responsibility of *some* official investigative body through "established procedural rules, customs, and practices," which is in contrast to a general cause of action that may be pursued by a private party with the requisite standing to do so. For instance, "formal charges" in criminal cases may only be prosecuted by the State. See, e.g., Ga. Const. of 1983, Art. VI, Sec. VIII, Para. I (d) ("It shall be the duty of the district attorney to represent the state in all criminal cases in the superior court of such district attorney's circuit[.]"); *Roberts v. State*, 280 Ga. App. 672, 674 (634 SE2d 790) (2006) ("[N]either an accused nor a third-party private citizen may prosecute a criminal matter on his or her own."). And in the JQC context, "formal charges" may only be filed by the investigative panel. OCGA § 15-1-21 (e) (3) (A). And, generally, we note

---

[4] "Complaint" is defined in the JQC Rules as "information in any form from any source received by the Investigative Panel that alleges . . . that a judge committed misconduct." Rules of the Judicial Qualifications Commission, [Terminology].

7

that some amount of informal investigations and inquiries involving input from concerned citizens and members of the general public are routinely done in both criminal cases and the JQC before formal charges are filed by the investigative body. Cf. *Inquiry Concerning Judge Coomer*, 316 Ga. 855, 874 (2) (d) n.19 (2023) (noting that "imposing discipline on a judge based solely on the judge's response to a JQC inquiry without the JQC first filing formal charges against the judge . . . might raise due process concerns"); see also *Inquiry Concerning Judge Baker*, 313 Ga. 359 (2022) (a complaint against respondent was submitted to the JQC, who in turn filed formal charges against respondent).

By contrast, the Legislature has used very clear language when it intends to allow for general citizens to have a cause of action or participate in the removal of government officials from office beyond the normal electoral process. Cf. *Best Jewelry Mfg. Co. v. Reed Elsevier Inc.*, 334 Ga. App. 826, 833 (1) (b) (780 SE2d 689) (2015) ("[V]iolating statutes and regulations does not automatically give rise to a civil cause of action by an individual claiming to have been injured from a violation thereof. Rather, the statutory text must expressly provide a private cause of action.") (citation omitted). For instance, OCGA § 48-5-296 provides that "any 100 or more

8

freeholders" in a county may file a petition to remove a member of that county's Board of Tax Assessors. Similarly, the Recall Act of 1989 provides that "at least 100 electors or equal in number to at least 10 percent of the number of electors who were registered to vote at the last preceding election" may apply to recall an elected official of this State, see OCGA § 21-4-5, and "any elector" may apply for a writ of mandamus if the election superintendent fails to comply with the provisions of the Act. OCGA § 21-4-18 (a). In another context, the Legislature has provided that "any person, firm, corporation, or other entity" may bring an action to enforce the provisions of both the Open Records Act and the Open Meetings Act. OCGA §§ 50-14-5 (a); 50-18-73 (a); see *Deal v. Coleman*, 294 Ga. 170, 181 (2) (b) (751 SE2d 337) (2013) ("[T]he [Open Records] Act contemplated requests by individual persons to inspect public records[.]"). Thus, when the Legislature intends for private citizens to be able to participate in the operations of government and the removal of public officials, it has specifically said so.

We note that the Supreme Court of Georgia's decision in *Roberts* does not compel a contrary result. While, in that case, "local residents" "filed a complaint" under OCGA § 45-10-4 with then Governor Nathan Deal, seeking the removal of

9

three members of the Warren County Board of Education, Id. at 705, the ability of private citizens to file formal charges under OCGA §§ 45-10-3 and 45-10-4 was not at issue. See id. "Decisions of [the Supreme] Court . . . do not stand for points that were neither raised by the parties nor actually decided in the resulting opinion, and questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (Citations and punctuation omitted.) *Cook v. State*, 313 Ga. 471, 478 (2) (a) (870 SE2d 758) (2022). For this same reason, we also do not find persuasive the list in the petitioners' brief of complaints brought by individual citizens that previous Governors have investigated. We note that there appears to be nothing preventing the Governor from investigating and acting on allegations of misconduct submitted by concerned citizens if the Governor so chooses. As this is a petition for a writ of mandamus, however, we are only concerned today with the question of when the law *requires* the Governor to do so.[5]

---

[5] We note that the trial court did not address the Governor's argument (relying on *State v. Towns*, 8 Ga. 360 (1850), and its progeny) that the courts of this state lack the power to issue a writ of mandamus against the Governor. Since no mandamus relief was ordered by the trial court, we do not address this issue further.

Considering all of this context as well as the command from the Supreme Court of Georgia that we must construe OCGA § 45-10-4 narrowly, *Roberts*, supra, 290 Ga. at 710 (2), we reach the same result as the trial court: we conclude that the petitioners' letters did not constitute "formal charges" as contemplated by OCGA § 45-10-4.[6] Accordingly, we affirm the trial court's dismissal of this mandamus petition.

*Judgment affirmed. Doyle, P. J., and Gobeil, J., concur.*

---

[6] The Governor suggests that "formal charges" under OCGA § 45-10-4 may be brought by the Attorney General, Inspector General, or members of a Board against specific members of that Board. We need not decide today who *can* file formal charges under OCGA § 45-10-4 - we only decide today that the petitioners here cannot.